**Alana G. I. Simmons**, OSB No. 143456
The Dalton Law Firm
1400 SW Montgomery St
Portland, OR 97201
P: 503-253-6029
F: 503-212-4439
alana@daltonlawfirm.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AFFOUET MARIE PRICE,<br><br>Plaintiff,<br><br>v.<br><br>TE CONNECTIVITY CORPORATION, CREGANNA MEDICAL, TACPRO LLC, Corporations, and ERIKA OLSON, RODOLFO QUINTANILLA, and JUDY FORD, Individuals,<br><br>Defendants. | CASE NO.: 19-cv-957<br><br>**COMPLAINT**<br><br>42 USC § 2000e-2 *et. seq.* and ORS 659A.030 (Gender/Pregnancy, Race, National Origin Discrimination); ORS 653.641 (Oregon Sick Leave Retaliation); ORS 659A.030 (Aiding or Abetting); 29 USC 201 *et. seq.* (Fair Labor Standards Act); Oregon Wage and Hour Laws<br><br>**DEMAND FOR JURY TRIAL** |

**NATURE OF THE CASE**

1.

Plaintiff AFFOUET MARIE PRICE ("Plaintiff") brings this action against Defendants

TE CONNECTIVITY CORPORATION, CREGANNA MEDICAL, TACPRO LLC, ERIKA

OLSON, RUDY QUINTANILLA, and JUDY FORD (collectively "Defendants") to remedy

COMPLAINT                                                                                                                    1

Gender/Pregnancy, Race, and National Origin Discrimination under 42 USC § 2000e-2 *et seq.* and ORS 659A.030; Oregon Sick Leave Retaliation under ORS 653.641; and Aiding/Abetting/Inciting under ORS 659A.030(1)(g).

2.

Plaintiff alleges unpaid wages under the Fair Labor Standards Act ("FLSA") for unpaid overtime wages due to her under 29 USC §§ 207 and 216, and liquidated damages for failure to pay wages under 29 USC § 216(b). She also alleges unpaid wages and penalties under Oregon statutes ORS 653.055, ORS 652.120(2), 652.140, 652.150, 653.261 as well as the applicable administrative regulations.

3.

Plaintiff seeks compensation for damages including compensatory damages including mental anguish, distress, humiliation, and economic damages, including lost wages, benefits, and past and future medical expenses.

4.

This is also an action to vindicate Plaintiff's rights and the rights of other employees to work in an environment free from discrimination based on sex/gender, race, and/or national origin, and to make Plaintiff whole. Plaintiff seeks injunctive relief.

**JURISDICTION AND VENUE**

5.

This is an action of damages under Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e-2, and its accompanying regulations, as well as supplemental state law statutory and tort claims. This Court has jurisdiction over Plaintiff's federal claims under 28 USC § 1331.

This Court has jurisdiction over Plaintiff's state claims under the doctrine of supplemental jurisdiction, 28 USC § 1367 because they derive from a common nucleus of operative fact.

6.

This Court also has jurisdiction for wage and overtime claims under the FLSA, 29 USC § 216(b).

7.

Venue is proper in this District insofar as the alleged unlawful acts took place in Washington County, Oregon while Plaintiff worked in Washington County, Oregon.

**PROCEDURAL REQUIREMENTS**

8.

Plaintiff filed a charge of unlawful employment practices with the Oregon Bureau of Labor and Industries ("BOLI"), Civil Rights Division. BOLI issued a right to sue letter on March 20, 2019. This lawsuit is thereby timely filed within the requisite 90 days.

9.

Plaintiff also co-filed her BOLI complaint with the US Equal Employment Opportunity Commission ("EEOC"). EEOC issued a right to sue letter on April 9, 2019. This lawsuit is thereby timely filed within the requisite 90 days.

**PARTIES**

10.

Plaintiff is a resident of the city of Tigard, county of Washington, and a citizen of the state of Oregon.

/ / / /

/ / / /

11.

Defendant TE CONNECTIVITY CORPORATION (Defendant "TE") is a Pennsylvania Corporation doing business in Oregon. At all material times, TE conducted business, including employment of Plaintiff, in the state of Oregon.

12.

Defendant CREGANNA MEDICAL (Defendant "Creganna") is a California Corporation doing business in Oregon. At all material times, Creganna conducted business, including employment of Plaintiff, in the state of Oregon.

13.

Defendant TACPRO LLC (Defendant "TacPro") is a California Corporation doing business in Oregon. At all material times, TacPro conducted business, including employment of Plaintiff, in the state of Oregon.

14.

At all material times, Defendants TE, Creganna, and TacPro exercised common control over Plaintiff. Defendants TE, Creganna, and TacPro were each joint employers of Plaintiff, and each defendant is jointly and severally liable for the acts described herein.

15.

Defendant ERIKA OLSON (Defendant "Olson") is an individual and was at all material times an employee and manager of Defendants TE, Creganna, and TacPro. She coerced, compelled, aided and/or abetted the acts of discrimination alleged herein. She is an Oregon resident.

////

////

16.

Defendant RUDY QUINTANILLA (Defendant "Quintanilla") is an individual and was at all material times an employee and manager of Defendants TE, Creganna, and TacPro. He coerced, compelled, aided and/or abetted the acts of discrimination alleged herein. He is an Oregon resident.

17.

Defendant JUDY FORD (Defendant "Ford") is an individual and was at all material times an employee and HR representative of Defendants TE, Creganna, and TacPro. She coerced, compelled, aided and/or abetted the acts of discrimination alleged herein. She is an Oregon resident.

18.

At all material times, Defendants TE, Creganna, and TacPro were engaged in the medical supply industry and employed over 500 employees in the state of Oregon.

**FACTUAL ALLEGATIONS**

19.

At all relevant times, Plaintiff was employed by Defendants TE, Creganna, and TacPro.

20.

Plaintiff was employed by Defendants for a little less than one (1) year as a supply chain purchaser/planner.

21.

As a supply chain purchaser/planner, Plaintiff was responsible for pricing and purchasing medical equipment and communicating frequently with clients.

/ / / /

22.

Plaintiff is a black woman from the Ivory Coast.

23.

Plaintiff was one of very few black employees of Defendants.

24.

Plaintiff reported directly to Erika Olson, whose manager was Rudy Quintanilla.

25.

Creganna Medical is a subsidiary of TE Connectivity.  Plaintiff's paychecks list TacPro LLC as her employer.  Upon information and belief, Plaintiff was employed by Creganna Medical, TE Connectivity, and TacPro, all joint employers.

26.

Plaintiff and other supply chain team members were initially permitted to occasionally work from home as long as they got their work done.

27.

Plaintiff had been working at Creganna for roughly four months when, around August 2017, she was told by her doctor that she would not be able to have children naturally.

28.

In or around August/September 2017, Plaintiff revealed this information to Defendant Olson, who in turn revealed that she also could not have children.

29.

Plaintiff discussed with Defendant Olson her plan to undergo In Vitro Fertilization. Defendant Olson commented that there had been other colleagues who had tried IVF without

success but wished Plaintiff luck nevertheless and told her to use her sick time if she needed to do so.

30.

During the fall/winter of 2017, Plaintiff attended medical appointments roughly once or twice weekly.  She generally made up the time; however, she occasionally used accrued sick time for those appointments.

31.

In or around January 2018, Defendant Olson indicated that Plaintiff would be given more responsibility since Defendant Olson was to receive a promotion.  At this time, Plaintiff's responsibilities and workload began to increase.

32.

In or around January 2018, the stress related to Plaintiff's increased workload, combined with the IVF medication and hormones she was taking, resulted in Plaintiff committing minor errors as she was onboarding the additional job duties she had been assigned.

33.

Defendant Olson brought the errors to Plaintiff's attention and Plaintiff committed to working on them as she continued to be assigned additional responsibilities.

34.

In or around late January, Plaintiff took two days off of work and underwent an embryo transplant.

35.

A couple of weeks later, Plaintiff learned that she was pregnant.  Upon information and belief, she was one of two pregnant women at the office at that time.

36.

Due to the high-risk nature of her pregnancy, Plaintiff disclosed her pregnancy to Defendant Olson in early February 2018 when she was about five weeks pregnant.

37.

Defendant Olson's treatment of Plaintiff changed after she learned about the pregnancy. She became colder and more standoffish.

38.

Defendant Olson began to micromanage Plaintiff's work activities and made work for her more difficult in general.

39.

Defendant Olson screened Plaintiff's emails and frequently checked the status of projects, resulting in more work for Plaintiff and wasted time having to explain to Defendant Olson the things she'd already been copied on.

40.

Defendant Olson added more tasks for Plaintiff but did not give direction as to how to complete the tasks. Many of these tasks had short turnaround times to be completed, which resulted in more errors.

41.

Plaintiff tried her best to learn her new job responsibilities, but understandably made mistakes while she was learning. The errors increased due to the pressure from Defendant Olson, who began to give Plaintiff both written and verbal criticism on her job performance and the mistakes she was making.

/ / / /

42.

Plaintiff explained to Defendant Olson that her criticism and training style were causing unnecessary stress and were not productive.

43.

On or around February 12, 2018, Plaintiff approached Defendant Quintanilla to discuss the struggles she was having with her new responsibilities and the inconsistent feedback from Defendant Olson.  In this meeting she notified Defendant Quintanilla of her high-risk pregnancy.

44.

On or around February 13, 2018, Defendants Olson and Quintanilla called Plaintiff in for a one-on-one meeting to go over her performance and discuss what was expected of her.

45.

In this meeting, Defendants Olson and Quintanilla told Plaintiff that she would have three months to improve her errors, otherwise she would be fired.  They said they would be conducting monthly reviews of her progress.

46.

In this meeting, Defendants Olson and Quintanilla did not give Plaintiff suggestions on how to improve her job performance nor did they give her flexibility due to her difficult pregnancy; instead, they demanded that she start working more overtime in the office.

47.

Between the news of her pregnancy and this meeting, Plaintiff had already started working off-the-clock at home regularly in addition to her eight hours daily at the job site.  She spent roughly three hours per night answering emails that she was unable to get to while at work due to the intensive demands placed on her by Defendant Olson.

48.

Defendant Olson was aware of Plaintiff's off-the-clock work since she was copied on the emails, but said nothing about it.

49.

During the February 13, 2018 meeting, Plaintiff requested the accommodation of doing all overtime work from home since she had a high-risk pregnancy and had been advised by her doctor to limit her working hours and stress.

50.

Plaintiff advised Defendants Olson and Quintanilla that it was not medically recommended for her to work beyond eight hours at the site, but that she was willing to do the work from home as needed.

51.

Plaintiff also recommended the addition of a new team member to ease the heavy workload of the buyers and planners. No accommodations were provided.

52.

Plaintiff continued working overtime from home without pay in order to try to keep up with the additional workload.

53.

Throughout this time, Plaintiff took one day off of work due to morning sickness. She requested to work from home on another day when she had a bad cold but was told instead to work five hours from home and then use sick time for the other three.

/ / / /

/ / / /

54.

Due to the exorbitant workload, Plaintiff had no choice but to continue working off the clock after she had clocked out each day in order to get her work done.

55.

On or around March 16, 2018, Plaintiff had a second sit-down performance review with Defendants Olson and Quintanilla.  Overall, Plaintiff had reduced her errors and was improving in her job performance.

56.

Defendant Olson was still not happy with Plaintiff's work and brought up issues which were not actually Plaintiff's errors nor relevant to the performance review.  The meeting ended with Defendants Olson and Quintanilla telling Plaintiff that despite her improved performance, they would be increasing her reviews to twice per month.

57.

The constant stress of being watched so closely and micromanaged by Defendant Olson began to affect Plaintiff physically and resulted in increased stomach pain, heart rate, and bleeding.  Complainant's doctor recommended she reduce her stress level.

58.

Plaintiff increased her off-the-clock work from home in order to minimize her stress since this reduced Defendant Olson's constant criticism and micromanagement and allowed Plaintiff to actually complete her work.

59.

On or around late February/early March 2018, Plaintiff met with Patricia Hennon, HR manager, to advise her of the situation and that she needed more ability to work from home.  Ms.

Hennon told Plaintiff that Defendant Olson was intelligent and if Plaintiff did what she needed to do, she would be fine.

60.

On or around March 20, 2018, Plaintiff was experiencing abdominal pain all morning and began bleeding around noon. After observing Plaintiff in tears due to concern for her baby, Defendant Olson allowed Plaintiff to leave work to go to the doctor. The baby ultimately was okay, but Plaintiff's doctor recommended that she spend the rest of the week resting and avoiding stressful activity, including work.

61.

The next day, Plaintiff returned to work because of her relentless work assignments and the threat of termination. Upon her return, Defendant Olson showed no sympathy for Plaintiff's emergency the day prior and instead assigned her another project with a quick turnaround.

62.

Plaintiff advised Defendant Olson that she had a tremendous amount of work at the moment, which was why she had returned to work so soon in spite of her doctor's recommendation to rest. Plaintiff requested an extension on the new project just assigned. Defendant Olson declined and asserted that she was being generous by asking Plaintiff to complete it within five days instead of just one. It was apparent that Defendant Olson had complete disregard for Complainant's health and the health of her unborn child.

63.

Plaintiff worked six of the next seven days, ensuring that all of her assignments were done on time with just one exception, a project which she had been assigned the day she had the medical emergency.

64.

On or around March 27, 2018, Plaintiff had a third one-on-one review meeting with Defendants Olson and Mr. Quintanilla.   Despite Plaintiff's hard work, Defendants Olson and Quintanilla again criticized Plaintiff's progress.   Defendant Olson cited minor issues, some of which were due to Defendant Olson's own training of Plaintiff, and another of which had occurred months before Plaintiff was even put on a performance improvement plan or notified that her performance was unsatisfactory.

65.

Defendant Olson also raised the issue of prices on invoices not matching with accounting records, an issue which Plaintiff had brought to Defendant Olson's attention and was due to the computer program malfunctioning and rewriting a price after the purchase order was closed, and not a mistake made by Plaintiff.

66.

After the meeting on March 27, Plaintiff overheard Defendants Olson and Quintanilla discussing her situation.  Although Defendant Quintanilla thought the alleged performance issues could be due to Complainant's pregnancy, Defendant Olson refused to even acknowledge that and instead insisted that Complainant be terminated.

67.

Complainant then heard Defendant Olson call and leave a voicemail for Patricia Hennon stating that Plaintiff was missing deadlines and should be fired.  Defendant Olson did not mention the fact that Plaintiff was pregnant.

/ / / /

/ / / /

68.

Upon hearing that she would soon be terminated, Plaintiff approached HR assistant Judy Ford and complained that she was being subjected to a hostile work environment.

69.

Since she knew she was to be fired anyway, Plaintiff told Defendant Ford that she couldn't continue working in that environment, for the sake of her own health as well as that of her baby. Defendant Ford told Plaintiff that she understood, and that Plaintiff could quit that day rather than giving notice, as had been her intention.

70.

Defendant Ford instructed Plaintiff to write "personal" on the form resignation letter she printed out even though Plaintiff told Defendant Ford she wanted to describe the actual circumstances leading to the intended termination and ultimate constructive discharge.

71.

On March 27, 2018, Plaintiff was constructively discharged.

72.

On April 5, 2019, Plaintiff, through her attorney, sent an employment and wage demand to Defendant.

73.

Counsel for Defendant sent a letter in response on April 15, 2019, enclosing a check of $1,931.40 with appropriate employment taxes withheld. The letter stated that upon receipt of a W-9 signed by Plaintiff, they would remit a check in the amount of $2,618.12, representing $686.72 as an Oregon late pay penalty, $1,931.40 as claimed unpaid wages, and $426.52 as statutory interest for 12.5 months.

/ / / /

74.

On April 25, 2019, Plaintiff's attorney responded via email, advising Defendant's counsel that the penalty amounts were undercalculated and that an additional $1,931.40 penalty was owed under 29 USC 216(b) of the Fair Labor Standards Act.

75.

On May 1, 2019, Defendant's counsel sent another letter enclosing a check for $3,044.64, representative of penalties and statutory interest on alleged unpaid overtime.

## FIRST CAUSE OF ACTION – EMPLOYMENT CLAIMS

### FIRST CLAIM FOR RELIEF
**(42 USC § 2000e – Gender/Pregnancy, Race, National Origin Discrimination)**

76.

Plaintiff incorporates by reference the allegations of paragraphs 1 through 75.

77.

Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, which makes discrimination against employees on the basis of sex, race, or national origin illegal.

78.

A substantial factor in Defendants' illegal treatment of Plaintiff was because of Plaintiff's gender, specifically her pregnancy, culminating in her constructive discharge.

79.

A substantial factor in Defendants' illegal treatment of Plaintiff was because of Plaintiff's race and/or national origin, culminating in her constructive discharge.

/ / / /

80.

As a direct and proximate consequence of Defendants' unlawful discriminatory conduct as described above, Plaintiff has suffered loss of income and other forms of compensation.

81.

Plaintiff has further suffered emotional distress and other non-pecuniary losses as a direct and proximate consequence of Defendants' unlawful discriminatory conduct as described above.

82.

Defendants TE, Creganna, and TacPro are liable for the actions of their supervisors and HR staff, including but not limited to the actions of Defendants Olson, Quintanilla, and Ford.

**SECOND CLAIM FOR RELIEF**
**(ORS 659A.030 – Gender, Race, National Origin Discrimination)**

83.

Plaintiff incorporates by reference the allegations of paragraphs 1 through 82.

84.

Defendants discriminated against Plaintiff based on her gender, race, and/or national origin.

85.

A substantial factor in Defendants' illegal treatment of Plaintiff was because of Plaintiff's gender, specifically her pregnancy, culminating in her constructive discharge.

86.

A substantial factor in Defendants' illegal treatment of Plaintiff was because of Plaintiff's race and/or national origin, culminating in her constructive discharge.

/ / / /

/ / / /

87.

As a direct and proximate consequence of Defendants' unlawful discriminatory conduct as described above, Plaintiff has suffered loss of income and other forms of compensation.

88.

Plaintiff has further suffered emotional distress and other non-pecuniary losses as a direct and proximate consequence of Defendants' unlawful discriminatory conduct as described above.

89.

Plaintiff is entitled to recover her reasonable attorneys' fees pursuant to ORS 659A.885. She is also entitled to recover her expert witness fees pursuant to ORS 20.107. Plaintiff is entitled to a preliminary and permanent injunction prohibiting Defendants from discrimination against individuals based on their gender, race, or national origin.

### THIRD CLAIM FOR RELIEF
### (ORS 653.641 – Oregon Sick Leave Retaliation)

90.

Plaintiff incorporates by reference the allegations of paragraphs 1 through 89.

91.

At all times mentioned in this Complaint, Defendants TE, Creganna, and TacPro employed at least ten (10) employees and were required to implement a sick time policy that allows an employee to accrue at least one hour of paid sick time for every 30 hours worked.

92.

Defendants' conduct, as alleged above, violated ORS 653.641, which makes retaliation against employees for utilizing accrued sick leave illegal.

/ / / /

/ / / /

93.

Plaintiff has further suffered emotional distress and other non-pecuniary losses as a direct and proximate consequence of Defendants' unlawful discriminatory conduct as described above.

94.

Defendants took adverse employment actions against Plaintiff which culminated in her constructive discharge.

## FOURTH CLAIM FOR RELIEF
### (ORS 659A.030(1)(g) – Aiding/Abetting/Inciting)

95.

Plaintiff incorporates by reference the allegations of paragraphs 1 through 94.

96.

Through their conduct, Defendants Olson, Quintanilla, and Ford participated in, condoned, aided, incited, compelled, and/or coerced unlawful discrimination and retaliation in violation of ORS 659A.030(1)(g).

97.

As a direct and proximate consequence of Defendants' unlawful discriminatory conduct as described above, Plaintiff has suffered loss of income and other forms of compensation.

98.

Plaintiff has further suffered emotional distress and other non-pecuniary losses as a direct and proximate consequence of Defendants' unlawful discriminatory conduct as described above.

99.

Plaintiff is entitled to recover her reasonable attorneys' fees pursuant to ORS 659A.885. She is also entitled to recover her expert witness fees pursuant to ORS 20.107.

/ / / /

## SECOND CAUSE OF ACTION – WAGE CLAIMS

### FIFTH CLAIM FOR RELIEF
### (29 USC §§ 207 and 216 – Overtime Violation)

100.

Plaintiff incorporates by reference the allegations of paragraphs 1 through 99.

101.

Under 29 USC § 207, Defendants were required to pay Plaintiff time and a half for time worked in excess of forty hours per week, yet willfully failed to do so.

102.

Because the hours spent working off the clock from her home were not paid, Plaintiff occasionally worked over 40 hours, yet did not receive the amount of overtime required by law to compensate her fully for those hours.

103.

Under 29 USC § 216(b), Defendants owe Plaintiff unpaid overtime wages and liquidated damages.

104.

Defendants made payment to Plaintiff in response to the wage demand, yet because penalties owed were not fully paid, they are still owed.

105.

Plaintiff is entitled to attorneys' fees and costs, in an amount to be determined at trial, pursuant to 29 USC § 216(b).

/ / / /

/ / / /

/ / / /

## SIXTH CLAIM FOR RELIEF
### (ORS 653.261 – Overtime Violation)

106.

Plaintiff incorporates by reference the allegations of paragraphs 1 through 105.

107.

Pursuant to ORS 653.261, Defendants were required to pay Plaintiff time and a half for time worked in excess of forty hours per week, but willfully failed to do so.

108.

Defendants made payment to Plaintiff in response to the wage demand, yet because penalties owed were not fully paid, they are still owed.

109.

Plaintiff is entitled to collect the difference between her overtime wages earned and those received in an amount to be proven at trial, together with attorneys' fees and costs, as well as pre- and post-judgment interest, and the 30 days of statutory penalty wages as provided by ORS 653.055 and ORS 651.150, and all other remedies available at law.

## SEVENTH CLAIM FOR RELIEF
### (ORS 652.120 – Failure to Pay Wages Timely)

110.

Plaintiff incorporates by reference the allegations of paragraphs 1 through 109.

111.

Pursuant to ORS 652.120(2), Defendants were required to pay Plaintiff all wages due, within 35 days of the hours worked, but willfully failed to do so.

/ / / /

/ / / /

112.

Between January and March 2018, Complainant worked a significant number of hours off the clock from home, for which she did not receive timely payment.

113.

Defendants TE, Creganna, and TacPro willfully failed to pay Plaintiff all compensation due to her at the required intervals during her employment.

114.

Plaintiff is entitled to recover her reasonable attorneys' fees and costs pursuant to ORS 652.200 and all other remedies available at law.

**EIGHTH CLAIM FOR RELIEF**
**(ORS 652.140 – Failure to Pay Compensation Upon Termination)**

115.

Plaintiff incorporates by reference the allegations of paragraphs 1 through 114.

116.

Pursuant to ORS 652.140, Defendants were required to pay Plaintiff all wages due, including for the hours worked off the clock from home, by the statutory deadline upon termination of her employment, but willfully failed to do so.

117.

Plaintiff is entitled to recover the 30 days of statutory penalty wages provided by ORS 652.150 as well as reasonable attorneys' fees and costs pursuant to ORS 652.200, pre- and post-judgment interest, and all other remedies available at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asserts her right to a jury trial and prays for judgment against Defendants consistent with the above claims for relief including but not limited to:

1.     Judgment for Plaintiff on all claims;

2.     Judgment against Defendants, in an amount to be determined at trial for economic damages;

3.     Judgment against Defendants, in an amount to be determined at trial, for noneconomic and other compensatory damages including pain, suffering, and emotional distress;

4.     Unpaid wages and overtime due;

5.     Liquidated damages under the FLSA;

6.     Statutory penalties pursuant to ORS 652.150;

7.     Amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving a payment of wages over the applicable time frame;

8.     Pre- and post-judgment interest as appropriate and allowed by law;

9.     A declaration that Defendants' conduct violated Plaintiff's rights and an order requiring Defendants to correct this deficiency;

10.    A declaration that Defendants violated the Fair Labor Standards Act and applicable Oregon law by failing to pay required wages;

11.    The institution of policies, practices, and programs that affirmatively eradicate the effects of past and present discrimination violations;

12.    Reasonable attorneys' fees;

13.    Expert witness fees and expenses;

14.    Costs and disbursements incurred herein;

15.    Punitive damages upon motion; and

16.    Such other relief as the Court feels is appropriate under the circumstances.


Dated this 18th of June, 2019.

Respectfully submitted,

THE DALTON LAW FIRM

*s/ Alana G. I. Simmons*
_____
Alana G. I. Simmons, OSB No. 143456
503-253-6029
Attorney for Plaintiff